Bobby ASHCRAFT *v.* Glenn "Sonny" COX and the
Arkansas County Democratic Central Committee, et al.

92-1166                                              839 S.W.2d 219

Supreme Court of Arkansas
Opinion delivered October 30, 1992

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

*Claude W. Jenkins*, for appellant.

*Berry & Mejia*, by: *Russell D. Berry*; and *Green & Henry*, by: *J.W. Green, Jr.*, for appellee.

Tom Glaze, Justice. This election contest was filed by appellant, Bobby Ashcraft, the incumbent candidate for Democratic nominee for Arkansas County Judge. Appellee, Glenn "Sonny" Cox, was a candidate who opposed Ashcraft at the May 26, 1992 Democratic Primary election, and the Arkansas County Democratic Committee certified Cox as having won the election 2,933 to 2,930. Ashcraft's complaint challenged the validity of four ballots he claims were cast and counted in Cox's favor and alleged that after these ballots were properly declared invalid by the court, Ashcraft would be the winner. Cox moved to dismiss Ashcraft's complaint, asserting it failed to allege a cause of action. The trial court agreed, and granted Ashcraft's motion. We affirm in this appeal.

There is little dispute concerning the facts in this case. After the polls closed on election day, the election officials commenced tabulating the ballots that were electronically cast by the voters, and during the count, the officials became aware that three ballots were missing. Because they were unable to find these ballots, the officials ceased counting ballots and went home. At this time, Ashcraft was leading 2,930 to Cox's 2,928.

The officials returned the next morning, and found the three missing ballots, two in the LaGrue East Township ballot box and the third was located in the Keaton Township box. These three ballots still had their respective ballot stubs attached to them, but in recounting the ballots in the county judge's race, the election officials separated the stubs and ran these ballots through the voter-counter machine. In his complaint, Ashcraft alleged these three ballots and ballot stubs could not be identified on the appropriate voter lists, and consequently, he could not name the three voters whose ballots were improperly cast and counted in Cox's favor.

Ashcraft also alleged two absentee ballots were received by mail. He asserted that one of these ballots was counted, but should not have been because no proof existed showing the absentee voter, Donnie Dewayne Manues, had mailed his ballot before the May 26, 1992 primary election.

Obviously, if the three missing ballots found on the morning of May 27th were correctly counted, Cox won the election 2,931 to Ashcraft's 2,930, even without considering whether Manues's absentee ballot should have been counted.[1] We conclude, as did the trial judge, that the three disputed ballot were properly counted and included in the results certifying Cox as the nominee for county judge.

Ashcraft concedes, in seeking to invalidate the three disputed ballots, that he does not challenge the qualifications of the voters who cast the votes. Nor does he allege any fraud in their having been cast or counted. Ashcraft first contends simply that the statutory law required each of the voters to separate the ballot stub from the ballot and to place the stub in the stub box and the ballot in the ballot box. See Ark. Code Ann. § 7-5-309 (1987). He urges that the three voters' failure to follow these requirements invalidates their respective ballots and precludes their votes from being counted. Ashcraft also argues that Ark. Code Ann. § 7-5-315(5)(1987) requires election judges and clerks to count ballots until the count is completed. Because the election officials involved here stopped and later resumed the count the day after the election, Ashcraft, citing Miley v. Rester, 16 So.2d 608 (La. App. 1944), claims he is entitled to the vote count that was tallied favoring him on the night of the election when the officials first stopped their count.

■■ Concerning Ashcraft's contention that he is entitled to the 2,930 to 2,928 vote count that apparently existed on the

---

[1] Actually, Ashcraft claims that four ballots were counted that should not have been, but the county committee certified that Cox had 2,933 votes, or five more than Cox appeared to have when the election officials temporarily ceased counting. As a consequence, Cox apparently received an additional vote on final certification which Ashcraft's complaint failed to address. Regardless of this unquestioned ballot in Cox's favor, Cox still had sufficient ballots to win since we conclude Cox was entitled to the three found ballots that were cast at the polls.

night of the election, we would point out that, while § 7-5-315 directs the election judges and clerks to continue the count to completion, the provisions of election laws are mandatory before the election, but are merely directory afterwards. *Spires* v. *Compton*, 310 Ark. 431, 837 S.W.2d 459 (1992). In addition, the courts do not favor disfranchising a legal voter because of the misconduct of another person. *Id.*

If we adopted Ashcraft's suggestion, election results could be established by election judges and clerks at any point in time they desired to terminate their vote count. Our election laws provide safeguards against undue delays in election officials' counting ballots and delivering election returns by requiring such materials and returns to be delivered to the party county committee within twenty-four hours after the polls close. Ark. Code Ann. §§ 7-5-317(b) and -318 (1987). No statutory authority, however, prohibits election officials from taking a reasonable but temporary break in counting ballots and canvassing returns.

■ Here, the election officials temporarily ceased counting ballots because they could not find three missing ballots. No fraud was alleged or involved in this stopping and resuming of the vote count. To adopt the rules suggested by Ashcraft would serve to disfranchise qualified voters whose only misfortune was to cast ballots at polling precincts where election officials decided, for good reason or bad, to take a temporary break in their counting duties.

We next direct our attention to Ashcraft's argument that the three ballots with stubs attached should not have been counted because the voters apparently marked and cast them in the ballot box without separating the ballot stubs and placing the stubs in the stub box. In his complaint, Ashcraft alleged ballots could not be identified with the voters because the election officials failed to maintain a voter list as required under Ark. Code Ann. § 7-5-307 (1987).[2] Again, Ashcraft's complaint alleges no fraud, and in no

---

[2] This allegation is somewhat difficult to understand. Voters must sign their registration affidavits before receiving a ballot (voter) card, and no allegation is made indicating more ballots were cast than the numbers of voters signing their affidavits on May 26. If the three voters were omitted from the precinct voter lists, their names could still be identified by first comparing and eliminating the names on the voter lists against

way challenges the qualifications of any voter casting ballots in this election. *See* Ark. Code Ann. § 7-5-312 (1987). To the contrary, the voters, who cast the three ballots found in ballot boxes but belatedly counted in this May 26th primary election, were presumably registered, eligible voters whose only mistake was their failure to separate the ballot stubs from their ballots and to place the stubs in the ballot stub box.

■■ Ashcraft cites no election law provisions prohibiting election officials from counting ballots that were cast with stubs attached — at least in circumstances like here, where no fraud is asserted nor where the qualifications of the voters have not been challenged. We believe the election officials were correct in counting the three ballots once their whereabouts were found. For this reason, we hold the trial court was right in deciding Ashcraft's complaint failed to state a cause of action since the election results in this race for county judge would not have changed. *Wheeler* v. *Jones*, 239 Ark. 455, 390 S.W.2d 129 (1965). Cox's votes, including the three ballots discussed above, total 2,931 to the 2,930 cast in favor of Ashcraft. Accordingly, we affirm the trial court's decision to dismiss Ashcraft's complaint without the necessity of considering the parties' further argument concerning the validity of the absentee ballot cast by Manues.

An immediate mandate shall issue.

---

the registration affidavits signed on May 26. Those registration affidavits signed by voters on May 26 and whose names do not appear on the voter list would be the voters who cast the three unidentified ballots. The election officials most likely became aware that the three ballots were missing when the officials opened the ballot (card) box to check the number of ballots cast against the list of voters as is required by Ark. Code Ann. § 7-5-613 (1987).